# EXHIBIT 1

Back to Story | Print 🖨 | Close ⊠



U.S. SENATE COMMITTEE ON

# Commerce, Science, and Transportation

DANIEL INOUYE, Chairman                    TED STEVENS, Vice Chairman

**For Immediate Release**
**April 25th, 2007**

### STEVENS AND INOUYE ID THEFT PREVENTION ACT PASSES COMMERCE COMMITTEE

WASHINGTON, D.C. – The Senate Committee on Commerce, Science and Transportation today passed S. 1178 the "Identity Theft Prevention Act." Committee Vice Chairman Senator Ted Stevens (R-Alaska) and Commerce Committee Chairman Daniel Inouye (D-Hawaii) introduced the legislation and it is cosponsored by Senator Gordon Smith (R-Ore.) and Senator Mark Pryor (D-Ark.) and Senator Bill Nelson (D-FL). This bill would strengthen information safeguards and ensure notification to consumers whose sensitive personal information has been acquired without authorization. The bill would also direct the Federal Trade Commission (FTC) to enforce rules to protect such information. Under the bill, consumers would be able to freeze their credit for a reasonable fee to protect themselves from identity theft. The bill now moves to the Senate where it awaits consideration.

"ID theft is a growing problem that plagues Americans in the far reaches of our nation and everywhere in between," said Senator Stevens. "Studies of identity theft show that Alaskans are particularly susceptible to this criminal activity. It is time for Congress to act. We must take steps to help people protect themselves. I urge the Senate to take up this bill, which has received broad bipartisan support, and pass it quickly."

Identity theft has risen dramatically nationwide over the past decade and the FTC estimates that each year nearly 9 million Americans – or roughly 4.6 percent of the domestic adult population – are victimized by identity thieves. The FTC indicates that physical and online identity theft accounted for 40 percent of the more than 616,000 consumer fraud complaints filed last year with the agency. The costs associated with identity theft are enormous. In 2006, it is estimated that the losses to businesses and financial institutions due to identity theft totaled $52.6 billion, and the out-of-pocket losses to consumers totaled $5 billion, which does not take into account the average 300 hours spent by each victim to restore their good name.

# EXHIBIT 2

se: 1:07-cv-02559 Document #: 41-2 Filed: 11/05/07 Page 4 of 72 PageID #:1



post-gazette**NOW**
Pittsburgh Post-Gazette

Living

# Identity theft -- unplugged

Monday, October 10, 2005
By Robin Sidel, The Wall Street Journal

Worried that shadowy gangs of Russian hackers are breaking into computer networks, stealing your financial secrets? Don't lose too much sleep over it.

But you might want to hide your checkbook when friends and relatives come visit your home.

Despite a series of alarming reports in recent months about security breaches that have made personal data potentially vulnerable to crooks -- such as the one at credit-card processor CardSystems Solutions Inc. affecting 40 million credit-card accounts -- most bank-related crimes remain stubbornly low-tech. They range from simple forgery of a check, to unauthorized credit-card use, to Dumpster-diving, which is when someone plucks a bank statement or credit-card bill from your garbage.

And the perpetrator probably may not be a stranger.

According to one recent study, by Javelin Strategy &amp; Research, a consulting firm in Pleasanton, Calif., in 26 percent of all cases the fraud victims knew the person who had misused their personal information. (Typically it was a family member, friend or neighbor, or in-home employee.) In addition, as much as 50 percent of debit-card fraud occurs when a card is snagged by a family member or friend who knows the card's personal-identification number, according to a recent report from TowerGroup, a unit of MasterCard International Inc.

The term "identity theft" is often used loosely to describe a wide array of crimes. But true identity theft occurs when someone uses stolen information to create a new form of identity, such as opening a new credit-card account under the victim's name. That differs significantly from other kinds of bank fraud, such as when a criminal uses a stolen ATM card to get cash out of a teller machine.

Whether it's full-blown ID theft or small-scale fraud, even in cases where the criminal is a stranger, it's almost never a case of sophisticated computer hacking. Although 75 percent of all households use the Internet and 65 percent of those do some online banking, "most criminals obtain personal information through traditional rather than electronic channels," according to the Javelin study. Some 29 percent of victims surveyed said their personal

information was obtained through a lost or stolen wallet, checkbook or credit card.

According to the study, the bulk of the rest were attributed to friends and relatives, corrupt employees, stolen mail, Dumpster-diving, and computer spyware. Computer viruses or hackers accounted for only 2.2 percent of incidents. While there has been a significant increase in the number of electronic attempts at identity theft, "the ones that are working are the traditional ones," said James Van Dyke, Javelin's president.

The Federal Trade Commission itself defines identity theft broadly, describing it as when someone possesses or uses a person's personal or financial information without their knowledge with the intent of committing fraud or other crimes.

The commission estimates that identity theft affects nearly 5 percent of the adult population, costing businesses and individuals a combined $53 billion annually. It received 246,000 reports of identity theft last year, nearly triple the number received in 2001. The FTC has attributed much of that rise to heightened awareness of the issue among consumers, making them more likely to report incidents as identity theft.

Overall, statistics on identity theft are spotty. For one thing, research has found that most victims of identity theft don't report the crime to police. In many cases, they aren't even certain that they are truly crime victims and don't know how the incident occurred. Banks increasingly alert authorities when incidents occur, but even those disclosures can be incomplete.

There are a number of steps individuals can take to protect themselves.

Many financial institutions are increasingly urging their clients to start using paper shredders at home. Household models can be relatively inexpensive, and they significantly reduce the chances that a criminal can find any useful personal information in the trash. Banks typically recommend shredding documents that contain account information, Social Security numbers, credit-card and ATM receipts and credit-card offers. Also, shred blank checks that sometimes come in the mail as part of a solicitation.

Another suggestion: Be particularly aware if credit-card bills or bank statements are missing from the mailbox. If a bill arrives more than two weeks late, the American Bankers Association suggests contacting the local post office to be sure it isn't being forwarded without the recipient's knowledge. Also check with the company where the bill originated.

It's also wise to avoid disclosing any personal information on forms or applications unless absolutely necessary, says Mike Cunningham, senior vice president in the credit-card fraud department at J.P. Morgan Chase &amp; Co.

As an example, Mr. Cunningham says, he was recently filling out an application to be a coach on his son's neighborhood football team in Arizona, and the form asked for his social security number, driver's license number and other personal information. He declined to provide the information, because there was no way for him to know whether his personal information would be kept under lock and key.

"I just told the team mom that I didn't see why they needed it -- it was the perfect amount of information for an identity thief," he said. He got the job anyway.

The only organizations you're required to provide with your social security number are your employer and your financial institutions. (This is for tax purposes.) If anyone else asks -- say, a retailer -- you don't have to give it. The company can decline to provide the service, but it's worth asking what other identification they might accept instead.

Amid the proliferation of old-fashioned fraud, some financial institutions are fighting back by urging their customers to abandon paper statements altogether and instead view their accounts online. Among them is E.Trade Financial Corp., which says its online system is more secure than paper statements that can be stolen or copied. A spokeswoman declined to specify how much money the company will save by eliminating the printing and mailing of paper statements.

Banks are having a particularly tough time battling one of the oldest and most common kinds of crime: check fraud. Attempts of check fraud rose to $5.5 billion in 2003 from $4.3 billion in 2001, according to the American Bankers Association. The incidents resulted in losses of $677 million, representing a slight decline from $698 million in 2001; the trade group attributed the drop to better fraud-detection methods.

That slight decline isn't so reassuring to Lee Roberts, senior vice president at National Penn Bancshares Inc., a regional bank based in Boyertown, Pa. As recently as the past few weeks, the bank has been hit by a wave of incidents in which criminals have copied checks and then altered them for fraudulent use. That practice "has been around for seven or eight years," says Mr. Roberts. But as photocopiers and image-manipulation computer software become more sophisticated, he says, "they're getting better at it."

------

## Battling Identity Theft

Despite all the buzz about high-tech online identity theft, most instances revolve around old-fashioned fraud such as forging a signature on a check. Here are steps for reducing the risk:

■ Check up on yourself regularly

Get a copy of your credit report every year from each of the major credit bureaus (TransUnion, Equifax, Experian) to make sure the records are accurate. Also, closely review all monthly bank and billing statements for discrepancies.

■ Travel light

Avoid carrying around credit-card or personal documents unless you really need them.

■ Keep personal data under wraps

Don't share personal ID numbers or passwords with anyone. Don't provide information over the phone or hand over personal data unless you know why it is needed. Keep a list of all account numbers in a secure place so that you have quick access if cards or documents get stolen or lost.

se: 1:07-cv-02559 Document #: 41-2 Filed: 11/05/07 Page 7 of 72 PageID #:

■ Buy a shredder for the home

Tear up or shred all credit-card receipts and all new-card offers that arrive in mail. Also destroy all documents that contain account numbers or other personal financial information.

■ Check the mail

Don't let mail sit in the mailbox for days on end. And don't place sensitive outgoing mail, such as bills, in your home mailbox to await collection. Instead, drop it in a collection box. Sources: Federal Trade Commission, American Bankers Association

First published on October 10, 2005 at 12 00 am

.

# EXHIBIT 3



Contact

Wednesday 12. September 2007
ies Cost £130 Million Daily  + + +  Ad: FORGET Filesharing like eDonkey or BitTorrent! Download uncensored Pictures, Softwar



America's Payment Systems
**Retriever Payment S**

About
News
Quotes
Clients
Resources
Careers
Services
F.A.Q.
Privacy Policy

Industry News

**Visa USA *Announces Account Truncation Initiative to Protect Consumers from ID Theft***
**Visa CEO Announces New Initiative at Press Conference with Sen. Dianne Feinstein**



**Washington, DC, March 6, 2003**

Reliability

How long have
we done this?
Top
Home
Contact
  Whats best for
  your business

What can we do
for your
business?

At a press conference today on Capitol Hill with Senators Dianne Feinstein (D-CA), Judd Gregg (R-NH), Jon Corzine (D-NJ) and Patrick Leahy (D-VT), Visa USA CEO Carl Pascarella, announced Visa USA's new account truncation program to protect consumers from identity theft. The following are excerpts of Mr. Pascarella's remarks:

"I am here today to talk about the steps that Visa is taking to put identity theft protections in place. Visa USA and our Member financial institutions have a long history of using state of the art technology to further protect cardholder information. Visa was the first payments company to adopt a zero liability policy for unauthorized purchases, and we've continued this leadership role with Verified by Visa, which authenticates cardholders for Internet purchases, and our sophisticated neural networks that monitor spending anomalies.

"We have also implemented our Cardholder Information Security Program, or CISP, a set of 12 requirements for protecting cardholder data for which all Visa payment system participants need to comply. In fact, Visa is adding more resources to our auditing process to ensure any entity that touches a Visa transaction will be compliant with our Cardholder Information Security

Program rules. The CISP "Digital Dozen" was the first set of standards within the payments industry for protecting cardholder data and served as a best practices model by the G-8 conference on cyber-crime in Tokyo.

"Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether. This is an added security measure for consumers that doesn't require any action by the cardholder. We are proud to be the first payments brand to announce such a move to protect cardholders' identities by restricting access to their account information on receipts.

" The first phase of this new policy goes into effect July 1, 2003 for all new terminals. I would like to add, however, that even before this policy goes into effect, many merchants have already voluntarily begun truncating receipts, thanks to groundwork that we began together several years ago.

" Receipt truncation is good news for consumers, and bad news for identity thieves. Identity thieves thrive on discarded receipts and documents containing consumers' information such as payment account numbers, addresses, Social Security numbers, and more. Visa's new policy will protect consumers by limiting the information these thieves can access.

" Visa's new receipt truncation measure builds upon our other security measures I mentioned, zero liability cardholder protection, Verified by Visa, neural networks and the Cardholder Information Security Program.

" Our receipt truncation policy is the latest initiative in Visa's broader identity theft consumer protection effort. I can't go into the details at the moment, but we will be announcing a series of additional steps to combat identity theft and offer tools to consumers.

" Visa is focused on maintaining the trust we have earned

through our security leadership. Because there is no silver bullet to eliminate identity theft, we are constantly adding new layers of security to protect cardholders. As a result of these, and many other security measures, fraud within the Visa system has fallen to an all-time low of just 7 cents per $100 transacted.

" Visa U.S.A. is pleased to be working with Senator Feinstein, and the other senators here today in the fight to protect consumers from identity theft. We look forward to continuing our joint efforts; after all, we share the same goals."

©Copyright 2004 RPS America All Rights Reserved
For more information feel free to Contact Us

# EXHIBIT 4



# Rules for Visa Merchants

Card Acceptance and Chargeback
Management Guidelines



# Transaction Receipt Requirements— Card-Present Merchants

The following are Visa requirements for all transaction receipts generated from electronic point-of-sale terminals (including cardholder-activated terminals).

## Electronic Point-of-sale Terminal Receipts



**Merchant or member name and location, or the city and state of the Automated Dispensing Machine or Self-Service Terminal**

**Transaction Date**

**Merchant Location Code**

*Effective November 1, 2005, the payment brand used to complete the transaction must be identified on the cardholder's copy of the transaction receipt.*

**Authorization Code, if applicable,** except for *Express Payment Service Transactions.*

**Space for Cardholder Signature,** except for:
- *Transactions in which the PIN is an acceptable substitute for Cardholder signature*
- *Limited-Amount Terminal Transactions*
- *Self-Service Terminal Transactions*
- *Express Payment Service Transactions*

**Truncated Account Number**
Visa requires that all new electronic POS terminals provide account number truncation on transaction receipts. This means that only the last four digits of an account number should be printed on the customer's copy of the receipt.

In addition, the expiration date should not appear at all. Existing POS terminals must comply with these requirements by July 1, 2006. To ensure your POS terminals are properly set up for account number truncation, contact your merchant bank.

**Transaction Amount**

```
        XYZ SHOES
       1040 PARK ST
     ANYTOWN, CA 94501
   PHONE # (000)555-5555
   NOV 10, 2005    12:30PM

   MERCH ID:  08233004

REF # : 003
ACT # : ***********5220
EXP   : XX/XX
CARD  : VISA
                    $21.69

APPROVAL CODE:    035789
TRAN ID: VGT7ET800815

   I AGREE TO PAY ABOVE
  TOTAL AMOUNT ACCORDING
  TO CARD ISSUER AGREEMENT

X
   _____
        SIGNATURE

       THANK YOU
     CARDHOLDER COPY
```

Rules for Visa Merchants—Card Acceptance and Chargeback Management Guidelines
©2005 Visa U.S.A. Inc., all rights reserved, to be used solely for the purpose of providing Visa Card acceptance services as authorized pursuant to agreement with a Visa member financial institution

# EXHIBIT 5

## DECLARATION OF KEITH J. KEOGH

Keith J. Keogh declares under penalty of perjury, as provided for by 28 U.S.C. § 1746 , that the following statements are true:

The Law Offices of Keith J. Keogh, Ltd. consists of two attorneys and a paralegal. The firm focuses on consumer protection cases for both individuals and class actions.

I am a partner of the firm and member of United States Court of Appeals for the Seventh Circuit, Northern District of Illinois, Southern District of Indiana, and Illinois State Bar as well as several bar associations and the National Association of Consumer Advocates and Association of Trial Lawyers of America.

I was lead counsel in the following class settlements: *Overlord Enterprises v. Wheaton Winfield Dental Associates*, 04 CH 01613, Circuit Court Cook County (Judge McGann)(Final Approval Pending); *Whiting v SunGard*, 03 CH 21135, Circuit Court Cook County (Judge McGann); *Whiting v. GoIndustry*,03 CH 21136, Circuit Court Cook County (Judge McGann). I was the attorney primarily responsible for the following class settlements: *Wollert v. Client Services*, 2000 U.S. Dist. LEXIS 6485 (N.D. Ill. 2000); *Rentas v. Vacation Break USA*, 98 CH 2782, Circuit Court of Cook County (Judge Billik); *McDonald v. Washington Mutual Bank*, supra; *Wright v. Bank One Credit Corp.*, 99 C 7124 (N.D. Ill. Judge Guzman); *Arriaga v. Columbia Mortgage*, 01 C 2509 (N.D. Ill. Judge Lindberg); *Frazier v. Provident Mortgage*, 00 C 5464 (N.D. Ill. Judge Coar); *Largosa v. Universal Lenders*, 99 C 5049 (N.D. Ill. Judge Leinenweber); *Arriaga v. GN Mortgage*, (N.D. Ill. Judge Holderman); *Williams v. Mercantile Mortgage*, 00 C 6441 (N.D. Ill. Judge Pallmeyer); *Reid v. First American Title*, 00 C 4000 (N.D. Ill. Magistrate Judge Ashman); *Fabricant v. Old Kent*, 99 C 6846 (N.D. Ill. Magistrate Judge Bobrick); *Mendelovits v. Sears*, 99 C 4730 (N.D.

Ill. Magistrate Judge Brown); *Leon v. Washington Mutual*, 01 C 1645 (N.D. Ill. Judge Alesia).

The individual class member's recovery in some of these settlements were substantial. For example, in one of the cases against a major bank the class members' recovery was 100% of their actual damages resulting in a payout of $1,000 to $9,000 per class member. In another case against a major lender regarding mortgage servicing responses, each class member who submitted a claim form received $1,431. *McDonald v. Washington Mutual Bank*

Some reported cases of mine involving consumer protection cases include: *Echevarria et al. v. Chicago Title and Trust Co.*, 256 F.3d 623 (7th Cir. 2001); *Hill v. St. Paul Bank*, 329 Ill. App. 3d 705 (1st Dist. 2002); *Cook v. River Oaks Hyundai, Inc.*, 2006 U.S. Dist. LEXIS 21646 (N. D. Ill. 2006); *Gonzalez v. W. Suburban Imps.*, Inc., 411 F. Supp. 2d 970 (N.D. Ill. 2006); *Eromon v. Grand Auto Sales, Inc.*, 333 F. Supp. 2d 702 (N.D. Ill. 2004); *Williams v. Precision Recovery, Inc.*, 2004 U.S. Dist. LEXIS 6190 (N.D. Ill. 2004); *Doe v. Templeton*, 2003 U.S. Dist. LEXIS 24471 (N.D. Ill. 2003); *Ayala v. Sonnenschein Fin. Servs.*, 2003 U.S. Dist. LEXIS 20148 (N.D. Ill. 2003); *Gallegos v. Rizza Chevrolet, Inc.*, 2003 U.S. Dist. LEXIS 18060 (N.D. Ill. 2003); *Szwebel v. Pap's Auto Sales, Inc.*, 2003 U.S. Dist. LEXIS 13044 (N.D. Ill. 2003); *Johnstone v. Bank of America*, 173 F. Supp.2d 809 (N.D. Ill. 2001); *Leon v. Washington Mutual Bank*, 164 F. Supp.2d 1034 (N.D. Ill. 2001); *Ploog v. HomeSide Lending*, 2001 WL 987889 (N.D. Ill. 2001); *Christakos v. Intercounty Title*, 196 F.R.D. 496 (N.D. Ill. 2000); *Batten v. Bank One*, 2000 WL 1364408 (N.D. Ill. 2000); *McDonald v. Washington Mutual Bank*, 2000 WL 875416 (N.D. Ill. 2000); and *Williamson v. Advanta Mtge Corp.*, 1999 U.S. Dist. LEXIS 16374 (N.D. Ill. 1999). The *Christakos* case significantly broadened title and mortgage companies' liability under Real Estate Settlement Procedures Act ("RESPA") and *McDonald* is the first reported decision to certify a class regarding mortgage servicing issues under the Cranston-Gonzales Amendment of RESPA.

I have argued before the Seventh Circuit, the First District of Illinois and the Multi-Litigation Panel in *Sawyer v Esurance* (Ruling Pending) , *Echevarria, et al. v. Chicago Title and Trust Co.*, *Hill v. St. Paul Bank*, and *In Re: Sears, Roebuck & Company Debt Redemption Agreements Litigation*, MDL Docket No. 1389.

*Echevaria* was part of a group of several cases that resulted in a nine million dollar settlement with Chicago Title.

My published works include co-authoring and co-editing the 1997 supplement to *Lane's Goldstein Trial Practice Guide* and *Lane's Medical Litigation Guide*.

In January 2007, Alexander H. Burke joined the firm. Mr. Burke previously worked for a consumer class action firm, and has devoted his legal career to protection of consumers' rights. Notable court opinions from cases that he litigated include: *Barnes v. FleetBoston Fin. Corp.*, C.A. No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D.Mass. Aug. 22, 2006) (appeal bond required for potentially frivolous objection to large class action settlement); *Longo v. Law Offices of Gerald E. Moore & Assocs., P.C.*, 04 C 5759, 2006 U.S. Dist. LEXIS 19624 (N.D.Ill. March 30, 2006) (class certification granted); *Nichols v. Northland Groups, Inc.*, case nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 U.S. Dist. LEXIS 15037 (N.D.Ill. March 31, 2006) (class certification granted for concurrent classes against same defendant for ongoing violations); *Lucas v. GC Services, L.P.*, case No. 2:03 cv 498, 226 F.R.D. 328 (N.D.Ind. 2004) (compelling discovery), 226 F.R.D. 337 (N.D.Ind. 2005) (granting class certification); *Murry v. America's Mortg. Banc, Inc.*, case nos. 03 C 5811, 03 C 6186, 2006 U.S. Dist. LEXIS 42900 (N.D. Ill. June 5, 2006) (granting class certification); *Rawson v. Credigy Receivables, Inc.*, case no. 05 C 6032, 2006 U.S. Dist. LEXIS 6450 (N.D. Ill. Feb. 16, 2006) (denying motion to dismiss in case against debt collector for suing on time-barred debts); *In re Kingen*, no. 01-84275, adv. No. 03-8020, 2004 Bankr. LEXIS 146 (Bankr.C. D. Ill. Feb. 17, 2004)

(extending bankruptcy law in favor of debtor).

Mr. Burke graduated from Colgate University in 1997 (B.A. International Relations), and Loyola University Chicago School of Law in 2003 (J.D.).

During law school he served as an extern to the Honorable Robert W. Gettleman of the District Court for the Northern District of Illinois and as a law clerk for the Honorable Nancy Jo Arnold, Chancery Division, Circuit Court of Cook County. He also served as an extern for the United States Attorney for the Northern District of Illinois and was the Feature Articles Editor of the Loyola Consumer Law Review and Executive Editor of the International Law Forum. Mr. Burke's published work includes *International Harvesting on the Internet: A Consumer's Perspective on 2001 Proposed Legislation Restricting the Use of Cookies and Information Sharing*, 14 Loy. Consumer L. Rev. 125 (2002).

Mr. Burke is licensed to practice law in the State of Illinois and is a member of the bar of the United States Court of Appeals for the Seventh and First Circuits, as well as the Northern District of Illinois, Central District of Illinois, Southern District of Illinois, Eastern District of Wisconsin, Northern District of Indiana and Southern District of Indiana. Mr. Burke is also an active member of the Chicago Bar Association, Illinois Bar Association and the National Association of Consumer Advocates

Executed at Chicago, Illinois, on September 25, 2007.

Keith J. Keogh

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WILLIAM HARRIS, individually and on behalf of all others similarly situated, | ) Case No. 07C 2559 ) |
| Plaintiff, | ) Judge Amy J. St. Eve ) |
| v. | ) Magistrate Judge ) Martin C. Ashman |
| BEST BUY CO., INC and BESTBUY.COM, LLC, | ) ) |
| Defendants. | ) |

**DEFENDANTS BEST BUY CO., INC. AND BESTBUY.COM, LLC'S
SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST DISCOVERY REQUESTS
TO BEST BUY CO., INC. AND BESTBUY.COM, LLC**

Defendants Best Buy Co., Inc. and BestBuy.com, LLC (together "Best Buy"), for their supplemental responses to Plaintiff's First Discovery Requests, state and respond as follows:

**GENERAL OBJECTIONS**

Best Buy makes the following General Objections with respect to each and every request for admission, interrogatory, and request for production (together, "Requests"):

1.     Best Buy objects to these Requests to the extent they seek information and documents relating to in-store sales transactions given that the Plaintiff made his purchase online.  Best Buy further objects to Plaintiff's references to and treatment of the "Thank You For Your Order" confirmation page, which is attached as Exhibit A to Plaintiff's Complaint, as a "receipt."  Best Buy objects to these Requests given that Best Buy's receipts for both in-store and online sales transactions have complied with FACTA at all relevant times.

2.     Best Buy objects to these Requests to the extent they seek information and documents protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection.

3.    Best Buy objects to these Requests (as well as the instructions or definitions) to the extent they seek to impose obligations on Best Buy not otherwise imposed by the Federal Rules of Civil Procedure or the local rules of this Court. Best Buy objects to these Requests to the extent they seek documents and things not relevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

4.    Nothing contained herein shall be construed as an admission relative to the existence or possession of any document. No response is an admission respecting the relevance or admissibility of any document or the truth or accuracy of any statement or characterization contained in the request.

5.    Best Buy objects to these Requests to the extent they call for information or documents that are equally accessible to both parties or are more accessible to Plaintiff than to Best Buy.

6.    Best Buy objects to these Requests to the extent that they seek documents and information outside of Best Buy's possession, custody, or control and which cannot be located by a reasonable search.

7.    Best Buy objects to these Requests to the extent they seek documents and information whose disclosure is prohibited by non-disclosure agreement(s) with third parties.

8.    Best Buy objects to these Requests to the extent they seek proprietary or confidential business information from Best Buy in the absence of a suitable protective order.

9.    Best Buy objects to these Requests to the extent that they are not limited to an identifiable scope and, as such, are overly broad, unduly burdensome, vexatious, harassing, and/or not reasonably calculated to lead to the discovery of admissible evidence.

10.     Best Buy objects to these Requests to the extent they are unreasonably cumulative or duplicative, or to the extent that the information sought may be obtained from another source in a more convenient, less burdensome, or less expensive manner.

11.     Best Buy objects to these Requests to the extent they are vague and ambiguous.

12.     Discovery is ongoing and Best Buy reserves the right to supplement these responses at a later date.

## RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1**:

Defendant's records indicate that plaintiff, William Harris, is a resident of this district.

**RESPONSE**:

Admitted.

**REQUEST FOR ADMISSION NO. 2**:

On May 5, 2007, defendants presented plaintiff with a computer-generated receipt from its online store that displayed his card expiration date.

**RESPONSE**:

Denied.  Following his online purchase, Plaintiff viewed and printed a "Thank You For Your Order" confirmation page.

**REQUEST FOR ADMISSION NO. 3**:

Exhibit A is a copy of the receipt provided to plaintiff on May 5, 2007.

**RESPONSE**:

Denied.  Exhibit A is a copy of the "Thank You For Your Order" confirmation page that Plaintiff viewed and printed.

3

**REQUEST FOR ADMISSION NO. 4**:

On December 4, 2006, defendants knew that FACTA required it to truncate certain portions of credit and debit card receipts.

**RESPONSE**:

Best Buy objects to this request as vague and ambiguous. Subject to and without waiving the foregoing objections, Best Buy responds: Admitted.

**REQUEST FOR ADMISSION NO. 5**:

There are over 1,000 persons in Illinois to whom defendants provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displays either (a) more than the last five digits of the person [sic] credit or debit card number, and/or (b) the expiration date of the person's credit or debit card.

**RESPONSE**:

Denied. Following an online purchase, customers are able to view and print the "Thank You For Your Order" confirmation page, and from December 4, 2006 to June 2, 2007, the "Thank You For Your Order" confirmation page displayed the expiration date of the person's credit or debit card.

**REQUEST FOR ADMISSION NO. 6**:

There are over 500 persons in Illinois to whom defendants provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displays either (a) more than the last five digits of the person [sic] credit card or debit card number, and/or (b) the expiration date of the person's credit or debit card.

4

**RESPONSE**:

Denied. Following an online purchase, customers are able to view and print the "Thank You For Your Order" confirmation page, and from December 4, 2006 to June 2, 2007, the "Thank You For Your Order" confirmation page displayed the expiration date of the person's credit or debit card.

**REQUEST FOR ADMISSION NO. 7**:

On May 5, 2007, it was defendant's custom and policy to provide customers who purchased items on a receipt with their credit or debt [sic] card expiration date printed on it.

**RESPONSE**:

Denied.

**REQUEST FOR ADMISSION NO. 8**:

On December 4, 2006, defendants' [sic] knew that providing credit and/or debit card receipts with expiration dates printed on them was prohibited by FACTA and the FCRA.

**RESPONSE**:

Admitted.

**REQUEST FOR ADMISSION NO. 9**:

Defendants received at least one communication from a credit card company advising it to comply with FACTA's credit card truncation requirements before December 4, 2006.

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, and overly broad. Subject to and without waiving the foregoing objections, Best Buy responds: Admitted.

**REQUEST FOR ADMISSION NO. 10**:

Defendants intended to violate the FACTA and the FCRA with respect to plaintiff and all other Illinois cardholders when it provided them an electronically printed email receipt after December 4, 2006, which receipt displayed either (a) more than the last five digits of the person [sic] credit or debit card number, and/or (b) the expiration date of the person's credit or debit card.

**RESPONSE**:

Denied.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1**:

Explain with specificity what steps, if any, defendant has ever taken in order to comply with the FACTA amendment to the FCRA as it relates to truncation of credit card information on receipts.

**ANSWER**:

Best Buy objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome. Best Buy further objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege or other applicable privileges or protections. Subject to and without waiving the foregoing objections, Best Buy responds that, pursuant to operating rules and guidelines received from merchant banks and credit card companies, Best Buy truncated the credit and debit card information on its receipts in or about 2003. Best Buy will produce responsive, non-privileged documents.

**INTERROGATORY NO. 2**:

Identify all departments, and all employees within those departments, that had any involvement in complying, ensuring compliance or attempting to ensure compliance with the FACTA amendment to the FCRA.

**ANSWER**:

Best Buy objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome. Further identification of individuals will be timely supplemented upon collection of the information and documents. Subject to and without waiving the foregoing objections, Best Buy responds:

Mark Geldernick, Corporate Counsel, Legal Department

Dee O'Malley, Senior Manager, Financial Services

Jared Prom, Senior Financial Analyst, Financial Services

Tim Laudenbach, Manager, Risk Management

Brad Bolin, Corporate Counsel, Legal Department

Sara Wood, Senior Manager, Customer Privacy

Lauren Wallen, Manager, Retail Business Capabilities

Ted Jirele, Accenture, POS

Sheldon Ree, Accenture, Authorizations

Linda Main, Planner, Order Management

Dave Langler, Manager, Web Development, Creative Services

Chap Achen, Director, Systems & SOP Support, Retail Support

**INTERROGATORY NO. 3**:

Identify all third parties, agents or other entities that had anything to do with defendants' compliance or noncompliance with the FACTA amendment to the FCRA.

**ANSWER**:

Best Buy objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome. Subject to and without waiving the foregoing objections, Best Buy responds:

Bank of America
P.O. Box 27128
Concord, CA 94527-9904

Bank of America Merchant Services (f/n/a National Processing Company)
1231 Durrett Lane
Louisville, KY 40213

Bank of America, N.A. (f/n/a National City Bank of Kentucky)
1231 Durrett Lane
Louisville, KY 40213

General Counsel
Visa Inc.
123 Mission Street
SF21G
San Francisco, CA 94105-1551

**INTERROGATORY NO. 4**:

Provide the number and identity of all persons with Illinois billing addresses to whom defendants provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displays either (a) more than the last five digits or the person [sic] credit or debit card number, and/or (b) the expiration date of the person's credit or debit card. Please include the person's name, address, email and the date the emails(s) [sic] were sent.

**ANSWER**:

Best Buy objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome. Best Buy further objects to this interrogatory to the extent it seeks information relating to in-store customers given that Best Buy stores have complied with FACTA at all relevant times. Best Buy further objects to this interrogatory on the grounds that the receipts Best Buy issues to customers following online purchases have complied with FACTA at all relevant times. Best Buy objects to this interrogatory because it denies that it provided an online electronically printed receipt to any person in Illinois. Subject to and without waiving the foregoing objections, Best Buy responds that between December 4, 2006 and May 22, 2007, 195,450 individuals with bill-to addresses in Illinois made an online purchase and were able to view and print the "Thank You For Your Order Page" confirmation page, which displayed the expiration date of the customer's credit or debit card. Best Buy denies that the "Thank You For Your Order" confirmation page displayed more than the last five digits of the customer's credit or debit card number.

Best Buy objects to producing customer names and contact information at this time on the grounds that it is premature; however, Best Buy affirmatively states that it will be able to collect this data if and when a class is certified.

**INTERROGATORY NO. 5**:

Provide the number and identity of all persons with Illinois billing addresses to whom defendants sent an email receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displays either (a) more than the last five digits of the person [sic] credit card number, and/or (b) the expiration date of the person's credit or debit card. Please include the person's name, address, email and the date emails(s) [sic] were sent.

**ANSWER**:

Best Buy objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence given that "emails" have no relevance to this lawsuit.

**INTERROGATORY NO. 6**:

Provide the number and identity of all persons with Illinois billing addresses to whom defendants sent an email receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displays either (a) more than the last five digits of the person [sic] credit or debit card number, and/or (b) the expiration date of the person's credit or debit card, where the customer opted for in-store pickup of the item(s) purchase on the internet. Please include the person's name, address, email and date emails(s) [sic] were sent.

**ANSWER**:

Best Buy objects to this interrogatory as duplicative of Interrogatory No. 5. Best Buy further objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence given that "emails" have no relevance to this lawsuit.

**INTERROGATORY NO. 7**:

Explain why defendants set forth the expiration date on its receipts to plaintiff and the proposed class, and identify specifically any documents that support this explanation.

**ANSWER**:

Best Buy objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome. Best Buy further objects to this interrogatory because Best Buy did not set forth the expiration date on any of its receipts. Subject to and without waiving the foregoing

objections, and without conceding that the "Thank You For Your Order" confirmation page is a receipt or is controlled by FACTA, Best Buy responds that following the filing and service of Plaintiff's Complaint on Best Buy, Best Buy removed the expiration date from the "Thank You For Your Order" confirmation page on or about June 2, 2007 in an abundance of caution. Best Buy will produce responsive, non-privileged documents.

**INTERROGATORY NO. 8**:

State how and when you first learned of FACTA's truncation requirements, and identify what steps and/or procedures you or your agents have ever taken in order to prevent credit card expiration dates or more than five digits of the card number from being printed on receipts. Include the date the step was taken, the person(s) who decided to take the step, the person(s) who performed the step and how the step altered defendant's practices.

**ANSWER**:

Best Buy objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome. Best Buy further objects to this interrogatory to the extent it is duplicative of other interrogatories. Subject to and without waiving the foregoing objections, Best Buy responds that, pursuant to operating rules and guidelines received from merchant banks and credit card companies, Best Buy truncated the credit and debit card information on its receipts in or about 2003. Best Buy will produce responsive, non-privileged documents.

**INTERROGATORY NO. 9**:

Identify all third parties and/or vendors what have been involved in providing receipts to customers since January 1, 2000.

**ANSWER**:

Best Buy objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Best Buy further objects to this interrogatory to the extent it is duplicative of other interrogatories. Subject to and without waiving the foregoing objections, Best Buy responds:

Bank of America Merchant Services (f/n/a National Processing Company)
1231 Durrett Lane
Louisville, KY 40213

Accenture LLP
333 South Seventh Street
Minneapolis, MN 55402
Attn: Accenture Best Buy General Manager
        cc:     Accenture LLP
               1661 Page Mill Road
               Palo Alto, CA 94304
               Attn: General Counsel

**INTERROGATORY NO. 10**:

Identify all third parties and/or vendors that have been involved in processing credit card transactions for Illinois customers since January 1, 2000.

**ANSWER**:

Best Buy objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Best Buy further objects to this interrogatory to the extent it is duplicative of other interrogatories. Subject to and without waiving the foregoing objections, Best Buy responds:

National Processing Company (n/k/a Bank of America Merchant Services)
1231 Durrett Lane
Louisville, KY 40213

Bank of America Merchant Services (f/n/a National Processing Company)
1231 Durrett Lane
Louisville, KY 40213

Bank of America, N.A. (f/n/a National City Bank of Kentucky)
1231 Durrett Lane
Louisville, KY 40213

Chase Paymentech (pin transactions)
14221 Dallas Parkway
Building 2
Dallas, TX 75254

## INTERROGATORY NO. 11:

State and identify whether you received advertising referring to (a) truncation or credit card numbers or expiration dates or (b) the ability of hardware or software to print receipts that did not display expiration dates or portions of credit card numbers.

### ANSWER:

Best Buy objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Best Buy will produce responsive, non-privileged documents.

## INTERROGATORY NO. 12:

Identify all persons who were involved in making the decision not to truncate credit card expiration dates on receipts provided to defendant's customers.

### ANSWER:

None. At all relevant times, Best Buy intended to and did comply with FACTA. At no time did Best Buy or any of its employees make a decision to willfully fail to truncate credit and debit card expiration dates in violation of FACTA.

13

**INTERROGATORY NO. 13**:

Identify all persons (including agents and third parties) involved in deciding what remedial measures to take in response to this lawsuit or other similar lawsuits, what measures were taken, who implemented the remedial measures and when they were implemented.

**ANSWER**:

Best Buy objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Best Buy further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine, or other applicable privilege and protection. Best Buy further objects to this interrogatory to the extent it is duplicative of other interrogatories. Subject to and without waiving the foregoing objections, and without conceding that the "Thank You For Your Order" confirmation page is a receipt or is controlled by FACTA, Best Buy states that following the filing and service of Plaintiff's Complaint on Best Buy, Best Buy removed the expiration date field from the "Thank You For Your Order" confirmation page on or about June 2, 2007 in an abundance of caution. The following individuals were involved in the decision to remove the expiration date from the "Thank You For Your Order" confirmation page:

Tom Harris, Corporate Counsel, Legal Department

Maria Koss, Corporate Counsel, Legal Department

Jessica Thoreson, Corporate Paralegal, Legal Department

Mark Geldernick, Corporate Counsel, Legal Department

Dee O'Malley, Senior Manager, Financial Services

Jared Prom, Senior Financial Analyst, Financial Services

Tim Laudenbach, Manager, Risk Management

Brad Bolin, Corporate Counsel, Legal Department

Sara Wood, Senior Manager, Customer Privacy

Lauren Wallen, Manager, Retail Business Capabilities

Ted Jirele, Accenture, POS

Sheldon Ree, Accenture, Authorizations

Dave Langler, Manager, Web Development, Creative Services

Chap Achen, Director, Systems & SOP Support, Retail Support

**INTERROGATORY NO. 14**:

State the net income of defendant for 2004, 2005 and 2006.

**ANSWER**:

Best Buy objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 15**:

Please identify the person(s), by name, address and telephone number, responding to these requests, each person consulted in preparing the responses, the interrogatory answer(s) they were consulted about, and identify each document consulted or referred to by that person.

**ANSWER**:

Best Buy objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Best Buy further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege and protection. Subject to and without waiving the foregoing objections, Best Buy responds that, in

addition to outside and in-house counsel and staff, the following persons assisted in preparing responses to these requests:

> Dee O'Malley, Senior Manager, Financial Services
> 7601 Penn Avenue South
> Richfield, MN 55423

> Timothy Laudenbach, Manager, Risk Management
> 7601 Penn Avenue South
> Richfield, MN 55423

> Ana Grace, Manager ADV-Global Services
> 7601 Penn Avenue South
> Richfield, MN 55423

Any contact with Best Buy employees should go through outside counsel. Thus, telephone numbers are over broad and unduly burdensome.

**INTERROGATORY NO. 16**:

State whether there is any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of an award, judgment or settlement in this action or to indemnify or reimburse for payments made to satisfy any award, judgment, or settlement which may be entered in this action. Also, identify all documents reflecting the existence of such an insurance or indemnification agreement.

**ANSWER**:

Best Buy objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Best Buy responds that it is not aware of any insurance policies that would cover the subject matter of this lawsuit.

**INTERROGATORY NO. 17**:

List all possible sources from which defendant may be able to compile a list of the persons to whom it provided an electronically printed receipt at the point of sale or transaction, in a transaction in an Illinois store occurring after December 4, 2006, which receipt displays either (a) more than the last five digits of the person [sic] credit card or debit card number, and/or (b) the expiration of the person's credit or debit card.

**ANSWER**:

Best Buy objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome. Best Buy further objects to this interrogatory on the grounds that it is premature. Subject to and without waiving the foregoing objections and pursuant to an agreement between the parties, Best Buy will collect this data if and when a class is certified.

**INTERROGATORY NO. 18**:

Identify any documents or other things that are responsive to plaintiff's "Rule 34 Requests" below, that are not being produced. Explain the substance, creation date, whereabouts, and request to which they are responsive and of each of those things, and explain defendant's reason(s) for not producing them.

**ANSWER**:

Best Buy will produce responsive, non-privileged documents. To the extent Best Buy is withholding documents on the grounds that they are protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or protection, Best Buy has produced a redaction log and a privilege log.

**INTERROGATORY NO. 19**:

Explain the corporate relationship between the defendants.

**ANSWER**:

Bestbuy.com, LLC is a wholly owned subsidiary of Best Buy Co., Inc.

**INTERROGATORY NO. 20**:

Identify all claims and complaints (including pleadings and correspondence) you have received alleging noncompliance with FACTA, including but not limited to 15 U.S.C. § 1681c(g).

**ANSWER**:

Best Buy objects to this interrogatory as not likely to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Best Buy states that it is not aware of any claims or complaints.

## RESPONSES TO RULE 34 REQUESTS

**REQUEST NO. 1**:

All records, data, documents or other things that refer to plaintiff, or any index, credit card or other account number or designation assigned to plaintiff.

**RESPONSE**:

Best Buy will produce responsive, non-privileged documents.

**REQUEST NO. 2**:

All documents concerning defendant's compliance with FACTA, including 15 U.S.C. § 1681c(g).

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, and unduly burdensome. Best Buy further objects to this request to the extent it seeks documents protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege

18

and protection. Subject to and without waiving the foregoing objections, Best Buy will produce responsive, non-privileged documents.

**REQUEST NO. 3**:

All emails, memoranda or other electronically searchable materials on servers or in archived files, including documents sent to or from any employee or agent of defendant (including attorneys acting within the scope of their representation of defendant), created, sent, modified or distributed on or after January 1, 2004, that contains any of the following strings of characters and/or satisfies the following search criteria:

(a) "FACTA", within the same email or email string as "1681c", and/or "1681(c)"

(b) "FCRA" within the same email or email string as "1681c", and/or "1681(c)"

(c) "truncate," within the same email or email string as "card number"

(d) "expiration date" within the same email or email string as "block", "truncate", "delete" or "exclude"

(e) "receipt" within the same email or email string as "point of the sale"

(f) "shall print more than the last 5 digits" within the same email or email string as "receipt"

The search shall be performed regardless of whether a term is preceded or followed by a space or another character, so that a search for "truncate" will turn up "truncated", "untruncated" and "truncated."

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, and unduly burdensome. Best Buy further objects to this request to the extent it seeks documents protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege

and protection.  Subject to and without waiving the foregoing objections, Best Buy will produce responsive, non-privileged documents relating to FACTA.

**REQUEST NO. 4**:

All written policies and other documents concerning defendant's compliance or noncompliance with the FCRA, including but not limited to the violations alleged in this lawsuit.

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, and unduly burdensome.  Best Buy further objects to this request to the extent it seeks documents protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege and protection.  Subject to and without waiving the foregoing objections, Best Buy will produce responsive, non-privileged documents relating to its compliance with FACTA.

**REQUEST NO. 5**:

All documents that concern or discuss truncation of any portion of credit and/or debt [sic] card numbers.

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, and unduly burdensome.  Best Buy further objects to this request to the extent it seeks documents protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege and protection.  Subject to and without waiving the foregoing objections, Best Buy will produce responsive, non-privileged documents.

**REQUEST NO. 6**:

All documents that concern or discuss truncation of any portion of credit and/or debt [sic] card expiration dates.

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, and unduly burdensome. Best Buy further objects to this request to the extent it seeks documents protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege and protection. Subject to and without waiving the foregoing objections, Best Buy will produce responsive, non-privileged documents.

**REQUEST NO. 7**:

All documents concerning defendant's document destruction policy as it pertains to any materials requested in these discovery requests.

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, and unduly burdensome. Best Buy further objects to this request to the extent it seeks documents protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege and protection. Subject to and without waiving the foregoing objections, Best Buy will produce responsive, non-privileged documents.

**REQUEST NO. 8**:

All documents that demonstrate or tend to show that inclusion of expiration dates as complained of in this lawsuit was the result of any error.

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, and unduly burdensome. Best Buy further objects to this request to the extent it seeks documents protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege

and protection. Subject to and without waiving the foregoing objections, Best Buy will produce responsive, non-privileged documents.

**REQUEST NO. 9**:

All memoranda, written policies, practices or manuals or other documents that discuss safeguarding defendant's customers' privacy or identity theft.

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, and unduly burdensome. Best Buy further objects to this request to the extent it seeks documents protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege and protection. Subject to and without waiving the foregoing objections, Best Buy will produce responsive, non-privileged documents.

**REQUEST NO. 10**:

All memoranda, written policies, practices or manuals or other documents (including legal memoranda, communications and other documents) that discuss avoiding liability under FACTA and/or FCRA.

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, and unduly burdensome. Best Buy further objects to this request to the extent it seeks documents protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege and protection. Subject to and without waiving the foregoing objections, Best Buy will produce responsive, non-privileged documents that discuss avoiding liability under FACTA.

**REQUEST NO. 11**:

A copy of the complaint and the initial communication for all lawsuits, BBB complaints, or attorney general or FTC communications or complaints regarding defendant's compliance or noncompliance with FACTA and/or FCRA since January 1, 2002.

**RESPONSE**:

Best Buy objects to this request as not reasonably likely to lead to the discovery of admissible evidence. Best Buy further objects to this request to the extent it calls for documents relating to Best Buy's compliance with FCRA as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Best Buy responds that it is not aware of any other complaints or communications relating to all lawsuits, BBB complaints, or attorney general or FTC communications or complaints regarding Best Buy's compliance or noncompliance with FACTA.

**REQUEST NO. 12**:

All communications between defendant, or defendant's attorneys, and any third party regarding plaintiff, this lawsuit or compliance with 15 U.S.C. § 1681c(g).

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, and unduly burdensome. Best Buy further objects to this request to the extent it seeks documents protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege and protection. Subject to and without waiving the foregoing objections, Best Buy will produce responsive, non-privileged documents.

**REQUEST NO. 13**:

A copy of any communication, including advertisements, received from any third party from, including but not limited to: credit card companies, credit card machine vendors or merchants or banks, regarding truncation of credit card information on receipts or FACTA.

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence. Best Buy further objects to this request to the extent it seeks documents protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege and protection. Subject to and without waiving the foregoing objections, Best Buy will produce responsive, non-privileged documents.

**REQUEST NO. 14**:

A copy of the user manuals for every credit card terminal that processed credit card transactions in Illinois from January 1, 2000.

**RESPONSE**:

Best Buy objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and pursuant to Plaintiff's counsel's agreement to narrow this request, Best Buy will produce responsive, non-privileged documents that relate to hardware and software used in connection with online transactions.

**REQUEST NO. 15**:

Federal tax returns for defendant for 2004, 2005 and 2006.

**RESPONSE**:

Best Buy objects to this request as not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 16**:

A copy of any insurance agreement that may require any third party to help satisfy all or part of any judgment, award or settlement of this case, to or pay for any part of the defense costs or fees or indemnification.

**RESPONSE**:

Best Buy objects to this request as not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Best Buy responds that it is not aware of any insurance policies that would cover the subject matter of this lawsuit.

**REQUEST NO. 17**:

All communications to or from Ambiron TrustWave that mention truncation of information on receipts, FACTA and/or 15 U.S.C. § 1681c(g).

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, and unduly burdensome. Subject to and without waiving the foregoing objections, Best Buy is not aware of any documents in its possession that relate to Ambiron TrustWave.

**REQUEST NO. 18**:

All communications to or from ATW Corp. that mention truncation of information on receipts, FACTA and/or 15 U.S.C. § 1681c(g).

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, and unduly burdensome. Subject to and without waiving the foregoing objections, Best Buy is not aware of any documents in its possession that relate to ATW Corp.

**REQUEST NO. 19**:

All contracts and agreements for hardware or software used to process credit or debit card transactions or issue receipts in such transactions.

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Best Buy will produce responsive, non-privileged documents.

**REQUEST NO. 20**:

All documents relating to Payment Application Best Practices.

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, and unduly burdensome. Subject to and without waiving the foregoing objections, Best Buy will produce responsive, non-privileged documents.

**REQUEST NO. 21**:

A copy of every record or document that is within defendant's custody and/or control that may assist development of a list of Illinois persons who were provided with receipts that contain their credit card expiration date.

**RESPONSE**:

Best Buy objects to this request as vague, ambiguous, overly broad, and unduly burdensome. Best Buy further objects to this request on the grounds that it is premature. Subject to and without waiving the foregoing objections and pursuant to an agreement between the parties, Best Buy will collect and produce this data if and when a class is certified.

DATED:  October 22, 2007

**DEFENDANTS BEST BUY CO., INC. AND BESTBUY.COM, LLC**

By: _____
      Anne M. Lockner
      Emily J. Prentice

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402
(612) 349-8500

KEEGAN, LATERZA, LOFGREN & GLEASON, L.L.C.
Thomas B. Keegan
Edward W. Gleason
566 West Adams Street
Suite 750
Chicago, Illinois 60661
(312) 655-0200

MP3 20244854.2

27

## VERIFICATION

The undersigned states that he is the President of Financial Services for Best Buy, that he has read the foregoing DEFENDANTS BEST BUY CO., INC.'S AND BESTBUY.COM LLC'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST DISCOVERY REQUESTS TO BEST BUY CO. INC. AND BESTBUY.COM LLC, that he is authorized to sign this Verification, that he is informed that no single officer of Best Buy has personal knowledge of all matters stated in the foregoing Answers, that the facts stated in such responses have been assembled by authorized employees, agents, and/or legal representatives of Best Buy, and that he is informed and believes that the facts stated in such responses are correct, based on the records of Best Buy and information reasonably available to its employees, agents, and/or legal representatives.

Dated: October **22**, 2007

BEST BUY

By _____
Mike Norona
President, Financial Services

Subscribed and sworn to before me
this *22nd* day of October, 2007



Notary Public

CHRISTINE FOX
Notary Public
Minnesota
My Commission Expires January 31, 2011

28

## CERTIFICATE OF SERVICE

I, Anne M. Lockner, hereby certify that I caused a true and correct copy of DEFENDANTS BEST BUY CO., INC. AND BESTBUY.COM, LLC'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST DISCOVERY REQUESTS TO BEST BUY CO., INC. AND BESTBUY.COM, LLC to be served this 22nd day of October, 2007, via electronic and first-class mail, postage prepaid, on the following counsel of record:

Mr. Alexander H. Burke
Law Offices of Keith J. Keogh, LTD.
227 West Monroe Street, Suite 2000
Chicago, IL 60606
email: ABurke@keoghlaw.com

_____
Anne M. Lockner

29

# Exhibit 7



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## AMENDED
### CIVIL MINUTES - GENERAL

| Case No. | SACV 07-0506 JVS (RNBx) | Date | October 15, 2007 |
|---|---|---|---|

| Title | Medrano v. WCG Holdings, Inc., and Does 1 through 10 |
|---|---|

| Present: The Honorable | JAMES V. SELNA, U.S. DISTRICT JUDGE |
|---|---|

| Karla Tunis | Sharon Seffens | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Greg Hafif | Steven Turner |
| Ferris Ain | Brian Sloan |

**Proceedings:**     Plaintiff's Motion for Class Certification

Cause called and counsel make their appearances.   The Court's tentative ruling is issued.   Counsel make their arguments.   The Court GRANTS the plaintiff's motion and rules in accordance with the tentative ruling as follows:

Plaintiff Manuel Medrano ("Medrano") seeks class certification pursuant to Federal Rule of Civil Procedure 23.  Defendant WCG Holdings, Inc., ("WCG") opposes the motion.

## I.     BACKGROUND

Medrano alleges that on or about February 28, 2007 he received from WCG an electronically printed receipt that included the expiration date of the card in violation of the Fair and Accurate Credit Transactions Act ("FACTA"). 15 U.S.C. § 1681c(g).  This subsection of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq., prohibits persons who accept credit or debit cards from printing more than the last five digits of the card number or the expiration date.  Id.  The statute provides for two compliance deadlines:  Machines in use before January 1, 2005 must have been brought into compliance before December 4, 2006, and machines first used after January 1, 2005 were required to comply immediately.  Medrano does not allege actual damage, but requests statutory damages of not less than $100 and not more than $1,000 for each willful violation as provided for in the FCRA.  15 U.S.C. § 1681n (a)(1)(A).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## AMENDED
### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 07-0506 JVS (RNBx) | Date | October 15, 2007 |
| Title | Medrano v. WCG Holdings, Inc., and Does 1 through 10 | | |



Medrano requests certification of four subclasses: Subclasses A and B contain persons issued non-compliant receipts from machines operated by WCG anywhere in the country; and Subclasses C and D contain persons issued non-compliant receipts from machines at 101 E. Foothill in Pomona, California; Subclasses A and C contain persons issued non-compliant receipts from machines put into use on or after January 1, 2005; and Subclasses B and D contain persons issued non-compliant receipts from machines put into use before January 1, 2005. Given that Medrano and the other putative class members' claims to relief depend only on the fact that each received a non-compliant receipt printed by WCG after the applicable statutory deadline, the Court finds that subclasses are unnecessary.[1] Therefore, the Court bases its analysis of the requirements for class certification on one class with this definition: Consumers[2] to whom WCG provided a receipt containing information prohibited by the FACTA after the applicable statutory deadline.

## II.   DISCUSSION

All class actions in federal court must meet the following four prerequisites for class certification:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties

---

[1] The Court does not, however, intend to limit the class to the single restaurant in the event that the defendant operates more than one restaurant. WCG claims in declarations filed with their opposition that WCG only operates one restaurant. Because no discovery has been exchanged, however, the Court does not limit the definition of class members at this time.

[2] While Medrano's subclass definitions include all "persons," the Court defines the class in terms of "consumers," because the FCRA provides relief only for consumers. See, e.g. 15 U.S.C. § 1681n (a).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## AMENDED
### CIVIL MINUTES - GENERAL

|  | SACV 07-0506 JVS (RNBx) |  | October 15, 2007 |
|---|---|---|---|
| **Title** | Medrano v. WCG Holdings, Inc., and Does 1 through 10 | | |

are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition, a plaintiff must comply with one of three sets of conditions set forth in Rule 23(b). Here, Medrano argues that his class should be certified because it meets the requirements of Rule 23(b)(3), under which a class may be maintained where common questions of law and fact predominate over questions affecting individual members and where a class action is superior to other means to adjudicate the controversy.

The decision to grant or deny class certification is within the trial court's discretion. Yamamoto v. Omiya, 564 F.2d 1319, 1325 (9th Cir. 1977). In doing so, a trial court is not permitted to make a preliminary inquiry into the merits. Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 177-78 (1974). Instead, the Court is only required to form a reasonable judgment. Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975). The Court may require the parties to provide additional material from which the Court may make an informed judgment as to each requirement of class certification. Id.

A.     Rule 23(a) Prerequisites

1.     Numerosity

There are several factors a court may consider in determining whether a plaintiff has satisfied the numerosity requirement. First, a court may consider whether the size of the class warrants certification. Gen. Tel. Co. of the Northwest, Inc. v. E.E.O.C., 446 U.S. 318, 330 (1980). Though there is no exact numerical requirement, a class of fifteen or fewer has been rejected. Id.; Harik v. California Teachers Ass'n, 326 F.3d 1042, 1051 (9th Cir. 2003). "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." Jordan v. Los Angeles County, 669

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## AMENDED
### CIVIL MINUTES - GENERAL

| Case No. | SACV 07-0506 JVS (RNBx) | Date | October 15, 2007 |
|---|---|---|---|
| Title | Medrano v. WCG Holdings, Inc., and Does 1 through 10 | | |



F.2d 1311, 1319 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982). In Jordan, the Ninth Circuit determined that the proposed class sizes in that suit of 39, 64, and 71 were large enough such that the other factors need not be considered. Id.

Here, WCG alleges that since January 1, 2006, approximately 32,000 credit or debit card transactions have been made at its Wendy's restaurant. (Decl. of Ketan Sharma ¶ 1.) The sheer number of potential class members justifies the Court's finding that the class in this case meets the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires that questions of law or fact be common to the class. This requirement is permissively construed. Hanlon v. Chrysler Corp., 140 F.3d 1011, 1019 (9th Cir. 1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id.

In this case, the facts and legal issues of each class member's claim are nearly, if not entirely, identical. There is a common core of salient facts across the class. Each member of the proposed class received a non-compliant receipt from WCG after the applicable FACTA compliance deadline. The overriding legal issue is whether WCG's non-compliance was willful so that the class members are entitled to statutory damages. Accordingly, there is a common core of salient facts and legal issues. Hanlon, 150 F.3d at 1019; see also Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003). The Court therefore finds that the proposed class members share sufficient commonality to satisfy Rule 23(a)(2).

### 3. Typicality

Under Rule 23(a)'s "permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 140 F.3d at 1020. There must be a demonstration that the "named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## AMENDED
### CIVIL MINUTES - GENERAL

 **Case No.** SACV 07-0506 JVS (RNBx)    **Date** October 15, 2007

**Title**   Medrano v. WCG Holdings, Inc., and Does 1 through 10

. . ." General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982).

Here, Medrano's claim is, in fact, "substantially identical" to the claims of the proposed class members – namely, he alleges that WCG issued him a receipt in willful violation of the FACTA. Accordingly, the Court finds that Medrano meets the typicality requirement.

4.    Fair and Adequate Representation

Representation is adequate if (1) class counsel are qualified and competent and (2) the class representative and his or her counsel are not disqualified by conflicts of interest. Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).

Class counsel must be experienced and competent. See Hanlon, 150 F.3d at 1021. When certifying a class, a Court is required to appoint class counsel, unless a statute provides otherwise. Fed. R. Civ. P. 23(g)(1)(A). Medrano seeks appointment of Greg Hafif of the Law Offices of Herbert Hafif, APC, as class counsel. The Court finds that the proposed class counsel is qualified, competent, and have no known conflicts of interest with any proposed subclass representative. WCG does not challenge their qualifications or competence,[3] nor does it contend that any class representative or counsel are disqualified by conflicts of interest.

Rule 23(a)(4) also requires that "the representative parties fairly and adequately protect the interests of the class." This requirement is to ensure that the named plaintiff and his or her counsel will pursue each class member's claim with sufficient "vigor." Hanlon, 150 F.3d at 1021; see also Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1994). The class representatives may not have interests antagonistic to the

---

[3]The Court notes WCG's allegations that Plaintiff and the law offices of Herbert Hafif have filed numerous complaints based on the FACTA in district courts. (Def.'s Opp'n at 2.) Without more, the Court does not construe this assertion as a challenge to the qualifications of proposed class counsel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

AMENDED
**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-0506 JVS (RNBx) | Date | October 15, 2007 |
| --- | --- | --- | --- |
| Title | Medrano v. WCG Holdings, Inc., and Does 1 through 10 | | |

remainder of the class. Lerwill v. Inflight Motion pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978). In this case, WCG does not challenge the adequacy of Medrano as class representative. The Court finds that Medrano and his counsel will pursue the members' claims with adequate vigor.

The Court accordingly finds that the requirements of Rule 23(a) are satisfied with respect to the general class.

B.    Rule 23(b)

Medrano seeks certification under Rule 23(b)(3). "Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Kamm v. Cal. City Dev. Co., 509 F.2d 205, 211 (9th Cir. 1975) (quoting Committee notes). A class action may be certified where common questions of law and fact predominate over questions affecting individual members and where a class action is superior to other means to adjudicate the controversy.

1.    Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods. v. Windsor, 521 U.S. 591 at 623 (1997). The Court must rest its examination on the legal or factual questions of the individual class members. Hanlon, 150 F.3d at 1022.

The Court agrees with Medrano that common questions of fact and law predominate over individual differences between proposed class members. Common questions of fact include when WCG put its credit and debit card transaction machines into service. Common questions of law include whether WCG's noncompliance was willful. The Court accordingly finds that common questions of law and fact predominate over individual differences between proposed members of the class.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

AMENDED
**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-0506 JVS (RNBx) | Date | October 15, 2007 |
| --- | --- | --- | --- |

| Title | Medrano v. WCG Holdings, Inc., and Does 1 through 10 |
| --- | --- |



2. <u>Superiority</u>

Next, the Court must consider if the class is superior to individual suits. <u>Amchem</u>, 521 U.S. at 615. "A class action is the superior method for managing litigation if no realistic alternative exists." <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234-35 (9th Cir. 1996). This superiority inquiry requires a comparative evaluation of alternative mechanisms of dispute resolution. <u>Hanlon</u>, 150 F.3d at 1023. Both parties emphasize various arguments under the heading of superiority and situate those arguments in the context of a series of recent decisions on motions to certify classes for FCRA claims. The Court addresses these arguments and concludes that class action is superior to individual suits for the purpose of enforcing these provisions of the FCRA.

a. <u>Disproportionate Damages</u>

WCG argues that class certification should be denied on the grounds that the aggregate statutory damages sought by the class would have a severe effect on WCG that is disproportionate to the harm suffered by the class. (Def.'s Opp. at 6-10.) Essentially, WCG claims that because the eventual damage award may be unconstitutional, <u>State Farm Mutual Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408, 416 (2003), the class should not be certified in the first place. This argument has persuaded other district courts to deny class certification of claims for statutory damages under the FCRA provision invoked here. 15 U.S.C. § 1681n. These courts found that the class actions were not superior to individual suits when the damages sought posed "disastrous consequences" to the defendant despite a lack of actual harm on the part of the plaintiff. <u>Spikings v. Cost Plus, Inc.</u>, 2007 U.S. Dist. LEXIS 44214 at *13 (C.D. Cal.. 2007); <u>Soualian v. Int'l Coffee and Tea LLC, et al.</u>, 2007 U.S. Dist. LEXIS 44208 at *11 (C.D. Cal. 2007) (concluding that "[g]iven the disproportionate consequences to Defendant's business and the lack of any actual harm suffered by members of the potential class, the Court finds that Plaintiff fails to meet the superiority requirements); <u>Legge, et al. v. Nextel Communications, Inc., et al.</u>, 2004 U.S. Dist. LEXIS 30333 at *45-50 (C.D. Cal. 2004) (denying class certification and noting that "[a]llowing this case to proceed as a class action has potentially ruinous results – without concomitant benefit to the class). <u>See also, Price</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

AMENDED
**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-0506 JVS (RNBx) |  Date | October 15, 2007 |
| Title | Medrano v. WCG Holdings, Inc., and Does 1 through 10 | | |

v. Lucky Strike Entertainment, Inc., CV 07-960-ODW (MANx) at p. 8 (C.D. Cal.
2007); Najarian v. Avis Rent a Car System, et al., 2007 U.S. Dist. Lexis 59932 at *14
(C.D. Cal. 2007).

These decisions rely on heavily on Kline v. Coldwell, Banker & Co., 508 F. 2d
226 (9th Cir. 1974), which reversed a district court order certifying a class based, in
part, on the finding that the potential damages "shock[ed] the conscience." Kline,
508 F. 2d at 234 (relying on Ratner v. Chemical Bank New York Trust Co., 54 F.R.D.
412 (S.D.N.Y. 1972) for the proposition that class actions can be properly denied
where plaintiffs seek "outrageous amounts" in statutory damages for technical
violations). In light of joint and several liability for potential damages, the court
found that the class action was not superior to other alternative methods of
adjudication. Id. at 235.

Kline does not directly control this case, however. First, the reasoning in Kline
turned on the drastic effect that joint and several liability would have on the potential
individual liability of each of 2,000 co-defendants. Id. at 234. There are no issues of
joint and several liability here. Second, the plaintiffs in Kline brought claims for
treble damages on unlimited actual damages under the Sherman and Clayton Acts,
whereas here the claims are for limited statutory damages under the FCRA. Id. at
235. Finally, the reasoning in Ratner that supports the outcome in Kline, does not
apply here: The court in Ratner found the damages "outrageous" given that the
alleged violations were merely technical, whereas here the class members are only
entitled to damages if they can show willful violation of the statute. Ratner, 54
F.R.D. at 416. See, White v. E-Loan, Inc., 2006 WL 2411240 at *8 (N.D. Cal. 2006).
Cf. Soualian, 2007 U.S. Dist. LEXIS 44208 at *11 n. 8 (C.D. Cal. 2007).

This Court therefore declines to apply the Kline rule here. Instead, the Court
holds that concerns about the constitutionality of damage awards are better addressed
at the damages phase of the litigation and not as part of class certification. This
approach is in accord with the Seventh Circuit's decision in a class action for
statutory damages under the FCRA, in which the panel reversed a denial of class
certification, noting that "constitutional limits are best applied after a class has been

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## AMENDED
### CIVIL MINUTES - GENERAL

| Case No. | SACV 07-0506 JVS (RNBx) | Date | October 15, 2007 |
|---|---|---|---|
| Title | Medrano v. WCG Holdings, Inc., and Does 1 through 10 | | |

certified." Murray v. GMAC Mortgage Corp., 434 F. 3d 948, 954 (7th Cir. 2006). See also, Pirian v. In-N-Out Burgers, 2007 WL 1040864 at *5 (C.D. Cal. 2007) (noting that "concerns regarding excessive damages are best addressed if the class is certified and the damages are assessed.") (citing Murray).

A court in the Northern District has recently followed Murray and certified a class action under the FRCA, noting that if defendants succeed in opposing motions for class certification on the grounds that aggregate statutory damages are too high, that would mean that "the greater the number of violations of the FCRA, the less likely [it is that] a company can be held fully accountable." White, 2006 WL 2411240 at *8 n. 8. In this same vein, Judge Easterbrook observed in Murray that "[m]aybe suits such as this will lead Congress to amend the [FCRA]; maybe not. While the statute remains on the books, however, it must be enforced rather than subverted." Murray, 434 F. 3d at 954. This Court agrees that denying class certification based on the potential for high damage awards is inconsistent with the FCRA provision for statutory damages.

Accordingly, the Court finds that the magnitude of the potential damage award does not affect the superiority of a class action for adjudication of this dispute.

### b. Alternative Methods of Enforcement

WCG argues that a class action is not superior because the class members can bring their claims individually without risk of economic loss, because the statute provides for recovery of attorney's fees. (Def.'s Opp. at 12.) This argument has found favor with some district courts in similar cases for FCRA damages, Spikings, 2007 U.S. Dist. LEXIS 44214 at *15, Price, CV 07-960-ODW (MANx) at p. 10, but has been rejected by others, White, 2006 WL 2411240 at *9. This Court finds that a class action is the superior method of enforcement for cases under the FCRA because the available statutory damages are minimal. Murray, 434 F. 3d at 953 (noting that the class action mechanism is "designed for situations such as this, in which the potential recovery is too slight to support individual suits."). The Court is not convinced that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to $1,000 will result in enforcement of the FCRA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# AMENDED
## CIVIL MINUTES - GENERAL

| Case No. | SACV 07-0506 JVS (RNBx) | Date | October 15, 2007 |
| --- | --- | --- | --- |
| Title | Medrano v. WCG Holdings, Inc., and Does 1 through 10 | | |

by individual actions of a scale comparable to the potential enforcement by way of class action.

      c.     Potential for Attorney Abuse

The Court does not share WCG's concern that class actions under the FCRA pose an unusual potential for attorney abuse. Cf. Spikings, 2007 U.S. Dist. LEXIS 44214 at *16; Price, CV 07-960-ODW (MANx) at p. 9. Moreover, WCG does not allege or provide evidence for any abuse or impropriety in this action.[4] Absent such a showing, the Court does not take the vague potential for attorney abuse into account.

The Court concludes a class action is superior to individual suits in this case, particularly in light of the minimal statutory damages available to the individual plaintiff. The Court is unpersuaded by WCG's arguments that potentially excessive damages or potential for attorney abuses should alter that conclusion.

Examination of the relevant 23(b)(3) factors similarly favor class certification. Rule 23(b)(3)'s non exclusive factors are: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

In this case, there is no advantage to either the judiciary or the litigants to giving individual members of the class control over the action. No suitable alternative forum exists. A class action here presents the advantage that aggregated wrongs are more likely to produce relief than disaggregated wrongs.

---

    [4]As mentioned above, the Court acknowledges WCG's observation that the Law Offices of Herbert Hafif have filed several similar actions. The Court does not, however, draw any independent conclusions from this observation.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### AMENDED
**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-0506 JVS (RNBx) | Date | October 15, 2007 |
|---|---|---|---|

| Title | Medrano v. WCG Holdings, Inc., and Does 1 through 10 |
|---|---|

Accordingly, Medrano has fulfilled the requirements of Rule 23(b)(3).

## V.  CONCLUSION

For the aforementioned reasons, the Court certifies the class pursuant to Federal Rule of Civil Procedure 23.

Initials of Preparer  : _____ 08

# Exhibit 8



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## AMENDED
### CIVIL MINUTES - GENERAL

| Case No. | SACV07-373-JVS(RCx) | Date | October 15, 2007 |
|---|---|---|---|
| Title | George L. Reynoso v. South County Concepts, et al. | | |

Present: The Honorable  JAMES V. SELNA, U.S. DISTRICT JUDGE

| Karla Tunis | Sharon Seffens | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Greg Hafif | Leonard Brazil |
| Ferris Ain | |

**Proceedings:** <u>Pliantiff's Motion for Class Certification</u>

Cause called and counsel make their appearances.  The Court's tentative ruling is issued.  Counsel make their arguments.  The Court GRANTS the plaintiff's motion and rules in accordance with the tentative ruling as follows:

Plaintiff George L. Reynoso ("Reynoso") seeks class certification pursuant to Federal Rule of Civil Procedure 23.  Defendant South County Concepts, Inc., dba TAPS Fish House and Brewery ("TAPS") opposes the motion.

## I.  BACKGROUND

Reynoso alleges that on March 21, 2007 he received from TAPS a receipt for his credit or debit card purchase that included the expiration date of the card in violation of the Fair and Accurate Credit Transactions Act ("FACTA").  15 U.S.C. § 1681c(g).  This subsection of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq., prohibits persons who accept credit or debit cards from printing more than the last five digits of the card number or the expiration date.  <u>Id.</u>  The statute provides for two compliance deadlines:  Machines in use before January 1, 2005 must have been brought into compliance before December 4, 2006, and machines first used after January 1, 2005 were required to comply immediately.  Reynoso does not allege actual damage, but requests statutory damages of not less than $100 and not more than $1,000 for each willful violation as provided for in the FCRA.  15 U.S.C. § 1681n (a)(1)(A).

Reynoso requests certification of four subclasses:  Subclasses A and C contain persons issued non-compliant receipts from machines put into use after January 1, 2005; and Subclasses B and D contain persons issued non-compliant receipts from machines put into use before January 1, 2005;  Subclasses A and B do not specify a location at which the non-compliant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## AMENDED
### CIVIL MINUTES - GENERAL

| Case No. | SACV07-373-JVS(RCx) | Date | October 15, 2007 |
|---|---|---|---|

| Title | George L. Reynoso v. South County Concepts, et al. |
|---|---|

receipt was received; and Subclasses C and D specify that the non-compliant receipt was received at Taps Fish House & Brewery in Brea, California. Given that Reynoso's and the other putative class members' claims to relief depend only on the fact that each received a non-compliant receipt printed by TAPS after the applicable statutory deadline, the Court finds that subclasses are unnecessary.[1] Therefore, the Court bases its analysis of the requirements for class certification on one class with this definition: Consumers[2] to whom TAPS provided a receipt containing information prohibited by the FACTA after the applicable statutory deadline.

## II.    DISCUSSION

All class actions in federal court must meet the following four prerequisites for class certification:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition, a plaintiff must comply with one of three sets of conditions set forth in Rule 23(b). Here, Reynoso argues that his class should be certified because it meets the requirements of Rule 23(b)(3), under which a class may be maintained where common questions of law and fact predominate over questions affecting individual members and where a class action is superior to other means to adjudicate the controversy.

---

[1]The Court does not, however, intend to limit the class to the single restaurant in the event that the defendant operates more than one restaurant.

[2]While Reynoso's subclass definitions include all "persons," the Court defines the class in terms of "consumers," because the FCRA provides relief only for consumers. See, e.g. 15 U.S.C. § 1681n (a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## AMENDED
### CIVIL MINUTES - GENERAL

| Case No. | SACV07-373-JVS(RCx) | Date | October 15, 2007 |
| --- | --- | --- | --- |

| Title | George L. Reynoso v. South County Concepts, et al. |
| --- | --- |

The decision to grant or deny class certification is within the trial court's discretion. Yamamoto v. Omiya, 564 F.2d 1319, 1325 (9th Cir. 1977). In doing so, a trial court is not permitted to make a preliminary inquiry into the merits. Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 177-78 (1974). Instead, the Court is only required to form a reasonable judgment. Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975). The Court may require the parties to provide additional material from which the Court may make an informed judgment as to each requirement of class certification. Id.

### A.    Rule 23(a) Prerequisites

#### 1.    Numerosity

There are several factors a court may consider in determining whether a plaintiff has satisfied the numerosity requirement. First, a court may consider whether the size of the class warrants certification. Gen. Tel. Co. of the Northwest, Inc. v. E.E.O.C., 446 U.S. 318, 330 (1980). Though there is no exact numerical requirement, a class of fifteen or fewer has been rejected. Id.; Harik v. California Teachers Ass'n, 326 F.3d 1042, 1051 (9th Cir. 2003). "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." Jordan v. Los Angeles County, 669 F.2d 1311, 1319 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982). In Jordan, the Ninth Circuit determined that the proposed class sizes in that suit of 39, 64, and 71 were large enough such that the other factors need not be considered. Id. Here, TAPS alleges that 45,943 receipts containing credit or debit card expiration dates were printed between December 4, 2006 (the later of the two potentially applicable compliance deadlines) and June 10, 2007 (the date on which TAPS began printing receipts without expiration dates). The sheer number of potential class members justifies the Court's finding that the class in this case meets the numerosity requirement.

#### 2.    Commonality

Rule 23(a)(2) requires that questions of law or fact be common to the class. This requirement is permissively construed. Hanlon v. Chrysler Corp., 140 F.3d 1011, 1019 (9th Cir. 1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## AMENDED
### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV07-373-JVS(RCx) | Date | October 15, 2007 |
| Title | George L. Reynoso v. South County Concepts, et al. | | |

In this case, the facts and legal issues of each class member's claim are nearly, if not entirely, identical. There is a common core of salient facts across the class. Each member of the proposed class received a non-compliant receipt from TAPS after the applicable FACTA compliance deadline. The overriding legal issue is whether TAPS's non-compliance was willful so that the class members are entitled to statutory damages. Accordingly, there is a common core of salient facts and legal issues. Hanlon, 150 F.3d at 1019; see also Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003). The Court therefore finds that the proposed class members share sufficient commonality to satisfy Rule 23(a)(2).

### 3.    Typicality

Under Rule 23(a)'s "permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 140 F.3d at 1020. There must be a demonstration that the "named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. . . ." General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982).

Here, Reynoso's claim is, in fact, "substantially identical" to the claims of the proposed class members – namely, he alleges that TAPS issued him a receipt in willful violation of the FACTA. Accordingly, the Court finds that Reynoso meets the typicality requirement.

### 4.    Fair and Adequate Representation

Representation is adequate if (1) class counsel are qualified and competent and (2) the class representative and his or her counsel are not disqualified by conflicts of interest. Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).

Class counsel must be experienced and competent. See Hanlon, 150 F.3d at 1021. When certifying a class, a Court is required to appoint class counsel, unless a statute provides otherwise. Fed. R. Civ. P. 23(g)(1)(A). Reynoso seeks appointment of Greg Hafif of the Law Offices of Herbert Hafif, APC, as class counsel. The Court finds that the proposed class counsel is qualified, competent, and have no known conflicts of interest with any proposed

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

# AMENDED
## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV07-373-JVS(RCx) | Date | October 15, 2007 |

| | |
|---|---|
| Title | George L. Reynoso v. South County Concepts, et al. |

subclass representative. TAPS does not challenge their qualifications or competence,[3] nor does it contend that any class representative or counsel are disqualified by conflicts of interest.

Rule 23(a)(4) also requires that "the representative parties fairly and adequately protect the interests of the class." This requirement is to ensure that the named plaintiff and his or her counsel will pursue each class member's claim with sufficient "vigor." Hanlon, 150 F.3d at 1021; see also Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1994). The class representatives may not have interests antagonistic to the remainder of the class. Lerwill v. Inflight Motion pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978). In this case, TAPS does not challenge the adequacy of Reynoso as class representative. The Court finds that Reynoso and his counsel will pursue the members' claims with adequate vigor.

The Court accordingly finds that the requirements of Rule 23(a) are satisfied with respect to the general class.

B.  Rule 23(b)

Reynoso seeks certification under Rule 23(b)(3). (Opening Br. p. 10, et seq.) "Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Kamm v. Cal. City Dev. Co., 509 F.2d 205, 211 (9th Cir. 1975) (quoting Committee notes). A class action may be certified where common questions of law and fact predominate over questions affecting individual members and where a class action is superior to other means to adjudicate the controversy.

1.  Predominance

---

[3]The Court notes that TAPS submitted a declaration alleging that the Law Offices of Herbert Hafif, APC have filed thirty complaints based on the FACTA in district courts. (Brazil Decl. ¶ 3). Without more, the Court does not construe this assertion as a challenge to the qualifications of proposed class counsel.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## AMENDED
### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV07-373-JVS(RCx) | Date | October 15, 2007 |
| Title | George L. Reynoso v. South County Concepts, et al. | | |

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods. v. Windsor, 521 U.S. 591 at 623 (1997). The Court must rest its examination on the legal or factual questions of the individual class members. Hanlon, 150 F.3d at 1022.

The Court agrees with Reynoso that common questions of fact and law predominate over individual differences between proposed class members. Common questions of fact include when TAPS put its credit and debit card transaction machines into service. Common questions of law include whether TAPS' noncompliance was willful. While each putative class member's right to recovery depends on the fact that he or she is a "consumer" for the purposes of the FCRA, the Court finds that this is an issue that pertains only to the predicate issue of ascertaining the members of the class and not to the predominance inquiry.

The Court accordingly finds that common questions of law and fact predominate over individual differences between proposed members of the class.

2.  Superiority

Next, the Court must consider if the class is superior to individual suits. Amchem, 521 U.S. at 615. "A class action is the superior method for managing litigation if no realistic alternative exists." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234-35 (9th Cir. 1996). This superiority inquiry requires a comparative evaluation of alternative mechanisms of dispute resolution. Hanlon, 150 F.3d at 1023. Both parties emphasize various arguments under the heading of superiority and situate those arguments in the context of a series of recent decisions on motions to certify classes for FCRA claims. The Court addresses these arguments and concludes that class action is superior to individual suits for the purpose of enforcing these provisions of the FCRA.

a.  Disproportionate Damages

TAPS argues that class certification should be denied on the grounds that the aggregate statutory damages sought by the class would have a severe effect on TAPS that is disproportionate to the harm suffered by the class.[4] (Opposing Br. 6-11.) Essentially, TAPS

---

[4]  TAPS also claims that inclusion of the expiration date on the receipts creates little risk of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## AMENDED
### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV07-373-JVS(RCx) | Date | October 15, 2007 |
| Title | George L. Reynoso v. South County Concepts, et al. | | |

claims that because the eventual damage award may be unconstitutional, State Farm Mutual Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003), the class should not be certified in the first place. This argument has persuaded other district courts to deny class certification of claims for statutory damages under the FCRA provision invoked here. 15 U.S.C. § 1681n. These courts found that the class actions were not superior to individual suits when the damages sought posed "disastrous consequences" to the defendant despite a lack of actual harm on the part of the plaintiff. Spikings v. Cost Plus, Inc., 2007 U.S. Dist. LEXIS 44214 at *13 (C.D. Cal.. 2007); Soualian v. Int'l Coffee and Tea LLC, et al., 2007 U.S. Dist. LEXIS 44208 at *11 (C.D. Cal. 2007) (concluding that "[g]iven the disproportionate consequences to Defendant's business and the lack of any actual harm suffered by members of the potential class, the Court finds that Plaintiff fails to meet the superiority requirements); Legge, et al. v. Nextel Communications, Inc., et al., 2004 U.S. Dist. LEXIS 30333 at *45-50 (C.D. Cal. 2004) (denying class certification and noting that "[a]llowing this case to proceed as a class action has potentially ruinous results – without concomitant benefit to the class). See also, Price v. Lucky Strike Entertainment, Inc., CV 07-960-ODW (MANx) at p. 8 (C.D. Cal. 2007); Najarian v. Avis Rent a Car System, et al., 2007 U.S. Dist. Lexis 59932 at *14 (C.D. Cal. 2007).

These decisions rely on heavily on Kline v. Coldwell, Banker & Co., 508 F. 2d 226 (9th Cir. 1974), which reversed a district court order certifying a class based, in part, on the finding that the potential damages "shock[ed] the conscience." Kline, 508 F. 2d at 234 (relying on Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412 (S.D.N.Y. 1972) for the proposition that class actions can be properly denied where plaintiffs seek "outrageous amounts" in statutory damages for technical violations). In light of joint and several liability for potential damages, the court found that the class action was not superior to other alternative methods of adjudication. Id. at 235.

Kline does not directly control this case, however. First, the reasoning in Kline turned on the drastic effect that joint and several liability would have on the potential individual

---

```
identity theft and actual harm, so that certification
of the class is unjust.  (Frank Decl. ¶ 27-31.)  The
Court find these factual assertions about the actual
risk posed by the violations irrelevant, given that the
FCRA does not require a showing of actual harm for
recovery of statutory damages.
```

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## AMENDED
### CIVIL MINUTES - GENERAL

| Case No. | SACV07-373-JVS(RCx) | Date | October 15, 2007 |
|---|---|---|---|
| Title | George L. Reynoso v. South County Concepts, et al. | | |

liability of each of 2,000 co-defendants. Id. at 234. There are no issues of joint and several liability here. Second, the plaintiffs in Kline brought claims for treble damages on unlimited actual damages under the Sherman and Clayton Acts, whereas here the claims are for limited statutory damages under the FCRA. Id. at 235. Finally, the reasoning in Ratner that supports the outcome in Kline, does not apply here: The court in Ratner found the damages "outrageous" given that the alleged violations were merely technical, whereas here the class members are only entitled to damages if they can show willful violation of the statute. Ratner, 54 F.R.D. at 416. See, White v. E-Loan, Inc., 2006 WL 2411240 at *8 (N.D. Cal. 2006). Cf. Soualian, 2007 U.S. Dist. LEXIS 44208 at *11 n. 8 (C.D. Cal. 2007).

This Court therefore declines to apply the Kline rule here. Instead, the Court holds that concerns about the constitutionality of damage awards are better addressed at the damages phase of the litigation and not as part of class certification. This approach is in accord with the Seventh Circuit's decision in a class action for statutory damages under the FCRA, in which the panel reversed a denial of class certification, noting that "constitutional limits are best applied after a class has been certified." Murray v. GMAC Mortgage Corp., 434 F. 3d 948, 954 (7th Cir. 2006). See also, Pirian v. In-N-Out Burgers, 2007 WL 1040864 at *5 (C.D. Cal. 2007) (noting that "concerns regarding excessive damages are best addressed if the class is certified and the damages are assessed.") (citing Murray).

A court in the Northern District has recently followed Murray and certified a class action under the FRCA, noting that if defendants succeed in opposing motions for class certification on the grounds that aggregate statutory damages are too high, that would mean that "the greater the number of violations of the FCRA, the less likely [it is that] a company can be held fully accountable." White, 2006 WL 2411240 at *8 n. 8. In this same vein, Judge Easterbrook observed in Murray that "[m]aybe suits such as this will lead Congress to amend the [FCRA]; maybe not. While the statute remains on the books, however, it must be enforced rather than subverted." Murray, 434 F. 3d at 954. This Court agrees that denying class certification based on the potential for high damage awards is inconsistent with the FCRA provision for statutory damages.

Accordingly, the Court finds that the magnitude of the potential damage award does not affect the superiority of a class action for adjudication of this dispute.

b.    Alternative Methods of Enforcement

TAPS argues that a class action is not superior because the class members can bring

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

# AMENDED
### CIVIL MINUTES - GENERAL

Case No.   SACV07-373-JVS(RCx)                     Date   October 15, 2007

Title     George L. Reynoso v. South County Concepts, et al.

their claims individually without risk of economic loss, because the statute provides for recovery of attorney's fees. (Opposing Br. 11-12.) This argument has found favor with some district courts in similar cases for FCRA damages, Spikings, 2007 U.S. Dist. LEXIS 44214 at *15, Price, CV 07-960-ODW (MANx) at p. 10, but has been rejected by others, White, 2006 WL 2411240 at *9. This Court finds that a class action is the superior method of enforcement for cases under the FCRA because the available statutory damages are minimal. Murray, 434 F. 3d at 953 (noting that the class action mechanism is "designed for situations such as this, in which the potential recovery is too slight to support individual suits."). The Court is not convinced that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to $1,000 will result in enforcement of the FCRA by individual actions of a scale comparable to the potential enforcement by way of class action.

      c.    Potential for Attorney Abuse

The Court does not share TAPS's concern that class actions under the FCRA pose an unusual potential for attorney abuse. Cf. Spikings, 2007 U.S. Dist. LEXIS 44214 at *16; Price, CV 07-960-ODW (MANx) at p. 9. Moreover, TAPS does not allege or provide evidence for any abuse or impropriety in this action.[5] Absent such a showing, the Court does not take the vague potential for attorney abuse into account.

      d.    Post-filing Compliance

TAPS claims that this case should not be allowed to proceed as a class action because it brought itself into compliance with the FACTA on June 11, 2007. (Myers Decl. ¶ 10, Opposing Br. p. 12.) Courts have found that quick compliance by defendants after a class action was filed "nullifie[s] any deterrence benefit that might have been derived from a class action," thereby making the class action inappropriate, Soualian, 2007 U.S. Dist. LEXIS 44208 at *12. See also, Spikings, 2007 U.S. Dist. LEXIS 44214 at *14; Najarian, 2007 U.S. Dist. Lexis 59932 at *15. However, while the Court certainly encourages TAPS to comply with applicable laws, the fact that they have taken measures to ensure future compliance does

---

     [5]As mentioned above, the Court acknowlegs TAPS's observation Law Offices of Herbert Hafif have filed several similar actions. The Court does not, however, draw any independent conclusions from this observation.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

# AMENDED
### CIVIL MINUTES - GENERAL

| Case No. | SACV07-373-JVS(RCx) | Date | October 15, 2007 |
|---|---|---|---|
| Title | George L. Reynoso v. South County Concepts, et al. | | |

not exonerate them of liability for past violations.

The Court concludes a class action is superior to individual suits in this case, particularly in light of the minimal statutory damages available to the individual plaintiff. The Court is unpersuaded by TAPS's arguments that potentially excessive damages, potential attorney abuses, or post-filing compliance should alter that conclusion.

Examination of the relevant 23(b)(3) factors similarly favor class certification. Rule 23(b)(3)'s non exclusive factors are: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

TAPS argues that this case would be unmanageable as a class action, largely based on the assertion that it will be impossible to notify all the class members. (Opposing Br. 15-16) The Court does not think that any potential difficulty Reynoso may have to comply with the notice requirement is sufficient to warrant denial of class certification. See, White, 2006 WL 2411240 at *9 (class of 100,000 found manageable for purposes of certification).

In this case, there is no advantage to either the judiciary or the litigants to giving individual members of the class control over the action. No suitable alternative forum exists. A class action here presents the advantage that aggregated wrongs are more likely to produce relief than disaggregated wrongs.

Accordingly, Reynoso has fulfilled the requirements of Rule 23(b)(3).

## V.   CONCLUSION

For the aforementioned reasons, the Court grants Reynoso's motion for class certification.

Initials of Preparer

11